And the next case up is Brothers v. Johnson, DACA 23-6127. Good morning. Good morning still, I guess, Counsel. Good morning, Your Honor. Please proceed when you're ready. Thank you. Jeffrey Tabor on behalf of the plaintiff appellant, E. Koala Brothers. Presently, I'd like to reserve three minutes of my time. This is an appeal for a jury verdict rendered in the Western District of Oklahoma last August. This is a 1983 wrongful death case in the Oklahoma County Jail, also known as the Oklahoma County Detention Center. There's several issues we have on appeal today. I'm going to start with perhaps what is the issue in our post-trial attempt to poll the jury, to contact the jury. Well, you go ahead, but I'd rather talk about why you never filed a Rule 50 motion, why you haven't argued plain error, and why you didn't file a reply brief. Because it seems to me that you might not have any issues left. We did not seek a 50A or a B relief. That's correct, Your Honor, and I would agree that Why not? My co-counsel and I made the decision at that time not to. All right. And therefore, I would agree with my colleagues that this court could not render judgment for the plaintiff on appeal, but could nevertheless still order a new trial in accord with prior case law from this court. Back to our jury issue, the Western District, like many districts, has a rule, a standing rule, prohibiting post polling by the parties privately. Local rule allows motion practice to permit contact. We filed that the week after the What's the standard, abuse of discretion? Yes. Okay, so that's your burden is to show an abuse. It is. And the court abused its discretion how? The court abused its discretion because, one, the jury was not polled in court. They were dismissed immediately that evening. Was there a motion made to poll the jury or a request made? In court that evening, Your Honor? No, sir. All right. The court let them go. To speak plainly, I don't think we really had an opportunity to. It was done very quickly. You always have an opportunity to stand up and say, I want the jury polled. Always. You didn't do it. We did not do it that evening. We did it the that's anticipated for permitting contact with the juries under 606B. It basically just said, we want to talk to the jury about what they discussed, what items they focused on, what they thought about deliberations, which, of course, is everything that you can't request under 606B. And now you've changed that approach on appeal and you're asking for other reasons, which, of course, those reasons are waived, but they also don't seem to comply with the limited reasons that you can seek to talk to a jury. How I think that fits together, Your Honor, is some of the jury instruction issues also on appeal to ensure that this jury understood what was before them. I don't want to get ahead of myself, but we do believe the jury may have misled and confused this jury on deliberate indifference and the remaining Monell-level claim that was tried to the jury. I just think there was a lot in there that could have confused these folks. Certainly, and that's the argument that you make when you talk about whether there was error with the instructions and whether there was prejudice. You try to, you have to decide, you know, could that have impacted the jury? Did it? But you don't get to ask the jury, did it impact your decision? That's not how it works. I understand, Your Honor, but those things can still come out if the jury is polled, depending on how they answer the questions. But you didn't ask for them to be polled, so that was waived. We believe we preserved it by filing the motion immediately after the trial pursuant to local rule, and the court took our motion up, which was imposed by the appellee, and we believe we preserved it in that manner through motion practice. We did that immediately, I believe, the Monday after the verdict was rendered Friday evening. More general issues on why we want this, why we want to talk to this jury other than the reasons I've stated on the jury instruction issues on appeal. This is a police case. This is the death of a black man in jail. We lived in heightened, politicized times for safety matters. As to police, I just think these cases present unique opportunities for heightened emotions, for juries consulting matters outside of what they're supposed to in the instructions and in the trial record. I just think these cases present a lot of room for extraneous activity and bias on behalf of the jury. We don't know that sitting here. We weren't able to poll them. I couldn't talk to them. I saw, and I understand there is case law from this court saying this one fact alone is not enough. The juror who we had perhaps potentially pegged as the foreperson came out crying from deliberation. I would want to know whether something improper happened there. And again, that fact in and of itself, this court has recognized, does not entail you to augment the standard rule we have in the Western District. But again, taking the totality of those factors, this family believes it's entitled to at least just know something more as to why a jury found what they did for the death of their brother in that jail. Did you file any kind of a malpractice claim against the physicians that were involved? We did, Your Honor. We sued Turnkey Health Clinics, which is the medical entity that the county jail contracts with. And we sued Kent King, who's the MD and was the medical director of the jail. Those claims were- What about the psychiatrist? What's that? What about the psychiatrist? We did not name Dr. Struhl. He only performed a mental health evaluation and the evidence we saw- He was supposedly the medical doctor on duty. He supposedly was. And as he testified at trial in his video testimony, he only did a very brief mental evaluation for mania staying outside the jail door. Dr. King and the nurse staff were the boots on the ground, so to speak, in terms of physical injuries and the fracture of cervical spine that killed Mr. Clinton. So we sued Dr. King and Turnkey. Those claims were resolved with all parties before trial. And so that would be the package of our argument on the jury polling issue. As I noted, I believe part of that overlaps into our jury instruction issue. Well, you're objecting to two instructions, 18 and 23. Yes, sir. And it appears that you only objected to one sentence during the jury instruction conference, and now you've broadened that considerably. How do you square that with the rules? Two parts. Your Honor, the conversation we had in the actual conference went into more depth than the conversation we had on the record after the instructions were formulated the following day. I understand that we objected to the sentence regarding negligence or inadvertence. And what do we do with that? Do we just reach out and take whatever you said earlier not on the record? Or are we bound by the record that was made on the jury instruction objections? Two points on that. One, you have to go off of what we objected to in terms of reviewing the totality of those instructions de novo. But as this Court has also recognized, even instructions that are not objected to at all can still be reviewed, I believe, under plain error. But you haven't made a plain error argument. That is correct, Your Honor, because we've objected properly to 18 and 23 there that morning of trial when they were presented by the Court. And the reason is the negligence or inadvertence qualifier, if you will, in those two instructions, I believe, confused the jury because this was not your typical 1983 jail case that was tried to the jury. Most of the time what you see is the underlying constitutional violation usually carries an individual actor who's named. So oftentimes you see in a shooting death case, you would name the individual responsible individually. If you bring the Monella claim, those individual claims serve as your underlying constitutional violation here. With what was resolved for the trial, the only thing that we tried was the Monella claim. And specifically within this Court's framework of the systemic failure analysis. Well, on instruction 23, you objected only to the addition of or inadvertence. And on instruction 18, you only objected to one sentence stating that negligence in medical care does not constitute deliberate indifference. Now your argument now seems to be much, much bigger than and more far-ranging than made in court, in that court. You made it in this court. Again, Your Honor, I don't believe we had to brief or exhaust every reason why that language was problematic there that morning at the court. It's that language that is the problem. And the reason is, and again, I don't think we had to say that morning in court, this is a problem because of the nature of our systemic failure claim. There's no individual underlying claims. Well, your argument in the district court was that no instruction from other Western District of Oklahoma cases contained the same language, namely inadvertence. Now, we're way past that now. And I just don't know how we can come to grip with these various arguments that are being raised really for the first time. I respectfully disagree, Your Honor. We have objected to those and I don't know if this court has seen an appeal like this where the only claim that got tried was the systemic failure claim. Well, counsel, let me interrupt you because I think it's worse than what Judge Kelly's saying as far as you're not raising them. From what I can see, I looked at your instructions that you submitted and, in fact, you submitted an instruction that says exactly what you're saying to us now, which is that you should not be including, should not be telling the jury that they can need to find that any individual committed a constitutional violation, correct? But your instruction says plaintiffs must prove both of the following, both, not either or, but both in order to succeed. One or more of the personnel working at the detention center displayed deliberate indifference and violated his multiple personnel working. So you yourself submitted an instruction that the language is almost worse than what the court gave. So I'm struggling to see how not only did you not raise this, you may have invited it. I respectfully disagree, Your Honor, because our instruction did not contain the negligence or indifference framework. It left room exactly what the systemic failure case law of this court says, which is you can find systemic failure if you have 15 state actors, not a single one of them was deliberate indifference, and the collective sum of those actions. I understand that. That's the second part of it. But what you're telling us now in your briefing is that that first part of it, which says you can find that one person committed a violation, was confusing to the jury because this is a systemic claim. But I'm saying you submitted that instruction yourself. Can you address that? Yeah, we don't have a problem with our proposed instruction, that part that was carried over into the instruction given by the court. It was the negligence or inadvertence language in there, and the reason we had a problem with it was under this circuit's law, you can find a systemic violation if not a single person engaged in deliberate indifference. Pre-trial, Your Honor, for all we knew, this jury could have gotten this case and said, hey, this one person, this one nurse, or this one jail guard was deliberately indifferent. I totally understand that, but my understanding of what you're complaining about now is that it included 1A, which is that one or more of the personnel working displayed deliberate indifference. I thought you were complaining now, as opposed to what you said below, that it should not have included that because that confused the jury. I've ran out of time. May I respond? Yes, please. Paired with the negligence or inadvertence framework is where 1A becomes problematic. If you have 1A without what the court added in there about negligence or inadvertence, it is not deliberate indifference, I don't necessarily see that that on its own would be a problem, and that was in our jury instruction. Our jury instruction did not have the district court added in saying negligence or inadvertence cannot be deliberate indifference because this jury could be left confused to say, can we find a systemic violation if we have 15 different guards and not a single one of them individually met that? When you add that language in, I think it can create confusion, and it did in this case. Thank you. Members of the court, my name is Rod Heggie. My co-counsel is Kerry Rinalhard. We are the assistant district attorneys that were assigned to defend the sheriff in official capacity in this case. There was a jury trial. The verdict is sacred. There's been no allegation of plain error. There's been no allegation of abuse of discretion. If the jury instructions taken as a whole are an adequate statement of the law, there is no grounds for reversal. If there was an error in a jury instruction, reversal is not warranted unless there was substantial prejudice, which this court has typically defined as being outcome determinative. In other words, if you can't find in the argument of the estate any error that the correction of which would change the outcome, there is no point in setting aside a jury verdict. Now, I asked you the question of whether or not the jury should have been polled. We have a local rule, 47.1. It says at no time, but it has a relief valve. It says if there are certain circumstances, those were never presented to the trial court. What compelling reason was ever given? None. So that should not be a basis for appeal. Ask for the jury instructions. Page limitations on briefs are a wonderful thing, but unfortunately, when you're talking about something like a jury instruction as to whether it should contain a reference to negligence or inadvertence, it's a bit much. I made the decision of quoting the recent cases that the circuit has issued regarding the use of that phraseology in that language. I should probably have gone all the way back to 1990 to quote Berry v. City of Muskogee, 900 F. 2nd, 1489, in which this court reversed a trial court that failed to include a disclaimer that the jury instruction on deliberate indifference could apply to negligence and inadvertence. In fact, the court said specifically, thus we were mandated for a new trial with proper instructions that caution the jury that mere negligence is not sufficient to impose liability on the city. I have no doubt that the cases I cited and the cases I didn't cite, like Berry v. City of Muskogee, were well thought through by the judge and his staff, and that's the reason they included that in the instruction. Every form submitted by us included it because that's in what's in the federal books, the federal form books. Now, there is no way to know because the jury doesn't. Deliberations are closed. They're not filmed. They're not recorded. There's no way to know whether or not they somehow got the word deliberate crossways with the word negligent or the word deliberate crossways with the word inadvertent. But the jury instruction tries to prevent that, and that has been the way it's been as long as I can remember with regard to these types of claims where deliberate indifference is the standard. That's the systemic failure. Same thing. It's the same kind of argument. Well, do you have a rule in your district court that you don't have to object to any of these instructions on those grounds? Is this a special Oklahoma federal district rule? No. Our rules are the same as the rules you've given everybody. That's what I thought. There has to be an objection, and the objection made is the one that is preserved for appeal. And do we have that here? That rule? Yes. No, not the rule. The objection. Well, I'm still looking for it. Well, then what are you arguing? Well, I'm anticipating. That's a good point. Let me address that directly. I've tried to anticipate what I thought the arguments were going to be today because they've shifted from what they were in the trial court. And if I shouldn't do that, I'll be glad to sit down because I don't have anything to say that would add to what's in my brief regarding whether you can use the word negligence and indifference in a couple of jury instructions. How about on whether the verdict can be sustained without filing Rule 50 motions? Well, obviously, in my brief, I argue you can still do, but that's how you preserve the error. And it wasn't preserved. That's not a special rule in your district? I don't think we've got any special rules other than maybe that local rule on you can't talk to the jury. And I didn't go check to see if other district courts have that rule. So you might have caught me on that one. But no, the duty to preserve the record is the duty everywhere. And typically, the only instruction, the only objections that can make it to an appeal are the ones that are made before the trial court. Giving the trial court the chance to address them. And Judge Paul was very meticulous. If you read that trial transcript, you'll see that he's very meticulous. If they'd made an objection, he would have addressed it. I have a whole lot of time left, but I have no further arguments. Are there any other questions? No. All right. Thank you. Was there a remaining time for rebuttal? No. All right. I'll give you a minute if you want to. One very quick item, Your Honor. I did not mention on the jury polling issue. Our local rule does not have factors. Our local rule 47.1 reads, at no time including after a case has been completed, may attorneys approach or speak to jurors regarding the case unless authorized by the court upon written motion. We followed that local rule by filing a written motion. Secondly, one other item I wanted to mention on that front was, this court has put out the green construction factors in its case about post-verdict contact. You have to balance the jury process with harassment or invading that province. I believe we took the least resistant act possible. As you probably saw, we attached a form letter to our brief that we would send once in the mail. Thank you. All right. Thank you, counsel, for your arguments. The case is submitted, and counsel are excused.